```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
THE NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS PENSION       :
FUND, et al.,
                                   :
                Plaintiffs,          10 Civ. 5177 (JMF)(HBP)
                                   :
    -against-                        REPORT AND
                                   :  RECOMMENDATION
METROPOLITAN MILLWORK AND
INSTALLATIONS, INC.                 :

                Defendant.    :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE JESSE M. FURMAN, United States

District Judge,

I.   Introduction

On October 18, 2010, the Honorable Richard J. Holwell,

United States District Judge, referred this matter to me to

conduct an inquest concerning plaintiffs' damages and attorneys'

fees in connection with their claim against defendant Metropoli-

tan Millwork and Installations, Inc. ("Metropolitan Millwork")

(Docket Item 6).  The inquest was ordered as a result of Judge

Holwell's Order dated September 29, 2010 noting defendant's

default in this case (Docket Item 5).  The matter has since been

reassigned to the Honorable Jesse M. Furman, United States District Judge (Docket Item 16).

Pursuant to the Order of Reference in this case, I issued a Scheduling Order on November 4, 2010 directing plaintiffs to serve and file proposed findings of fact and conclusions of law, along with evidentiary materials supporting their claim for damages, by January 11, 2011 (Docket Item 7 at ¶ 1).  My November 4, 2010 Scheduling Order further directed defendant to submit responsive materials by February 11, 2011.  Specifically, my Order provided:

> Defendants shall submit their response to Plaintiff's submission, if any, no later than February 11, 2011.  IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY FEBRUARY 11, 2011 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

(Docket Item 7 at ¶ 2) (emphasis in original).

On or about January 11, 2011, plaintiffs filed a document entitled "Plaintiffs' Findings of Fact and Conclusions of Law with Respect to the Inquest on Damages" along with supporting evidentiary material (Docket Items 8 and 9).

2

Because defendant was represented by counsel at the time of my November 4, 2010 Scheduling Order, a copy of the Order was sent directly to counsel of record via this Court's Electronic Case Filing ("ECF") system.  I received a letter from defendant's counsel dated February 11, 2011, however, in which counsel represented that although he received plaintiffs' submission concerning damages on January 13, 2011, neither he nor Metropolitan Millwork had received the Scheduling Order until February 9, 2011 (Docket Item 10).  As a result, defendant's counsel requested an extension of time in which to make a responsive submission.  I granted this application, and on March 22, 2011, defendant submitted a document entitled "Defendant's Finding of Fact [sic] and Conclusions of Law with Respect to the Inquest on Damages" along with supporting evidentiary material (Docket Item 12).  Defendant's counsel also filed a Notice of Appearance in this action dated March 23, 2011 (Docket Item 13).

Neither party has requested a hearing on the issue of damages.  Accordingly, on the basis of the Complaint and the parties' written submissions, I respectfully recommend that the Court make the following findings of fact and conclusions of law. I further recommend that the Court (1) treat plaintiffs' motion for default judgment as one for summary judgment, (2) confirm the arbitration award, (3) deny plaintiffs' application for attor-

neys' fees incurred in this action, but allow them 30 days to submit contemporaneous time records supporting their fee application and (4) award plaintiffs $60.00 for costs.

II.   <u>Findings of Fact</u>

     A.   The Collective
          <u>Bargaining Agreement</u>

     1.   At issue in this action is a collective bargaining agreement ("Agreement") between the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("Union") and Metropolitan Millwork (Complaint, dated June 30, 2010 ("Compl.") (Docket Item 1), ¶ 1).[1]

---

[1]After a defendant defaults, all the allegations of the Complaint, except as to the amount of damages, are taken as true. <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 70 (2d Cir. 1971), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 409 U.S. 363 (1973); <u>Wing v. East River Chinese Rest.</u>, 884 F. Supp. 663, 669 (E.D.N.Y. 1995); <u>Deshmukh v. Cook</u>, 630 F. Supp. 956, 959 (S.D.N.Y. 1986) (Conner, D.J.).  However, as discussed in Section III.B of this Report and Recommendation, a motion to confirm an arbitration award should be treated as akin to a summary judgment motion.  Notwithstanding this, and although defendant contends that it did not receive adequate notice of the arbitration hearing held in this matter, defendant does not otherwise contest the factual allegations made by plaintiffs in their Complaint.

B.    <u>The Parties</u>

2.    Plaintiffs[2] are comprised of (1) jointly administered, multi-employer Taft-Hartley Benefit Funds ("Benefit Funds") which are established and maintained pursuant to the Labor Management Relations Act ("LMRA"),[3] 29 U.S.C. § 186(c)(5), (2) not for profit corporations and (3) labor organizations within the meaning of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5) (Compl. at ¶ 5).

3.    With respect to the Benefit Funds, Frank Spencer and Paul O'Brien were fiduciaries of the funds at all relevant times within the meaning of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(21) and 1132 (Compl. at ¶ 5).  The Benefit Funds provide "health, medical and related welfare benefits, pension and other benefits to eligible partici-pants and beneficiaries on whose behalf they receive contribu-

---

[2]The plaintiffs include:  the New York City District Council of Carpenters Pension Fund; the New York City District Council of Carpenters Welfare Fund; the New York City District Council of Carpenters Annuity Fund; the New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the New York City District Council of Carpenters Charity Fund, by Frank Spencer and Paul O'Brien, as Co-Chairmen of the Board of Trustees; the New York City and Vicinity Carpenters Labor-Management Corporation; and Frank Spencer, as Assistant Supervisor of the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America.

[3]The LMRA is also known as the "Taft-Hartley Act."

tions from numerous employers pursuant to collective bargaining agreements between the employers and the Union" (Compl. at ¶ 6, citing 29 U.S.C. § 1002(1), (3)).

4.    Plaintiff the New York City and Vicinity Carpenters Labor-Management Corporation is a New York not-for-profit corporation (Compl. at ¶ 8).

5.    The Union is a labor organization, as well as the certified bargaining representative for certain employees of defendant (Compl. at ¶ 7).

6.    Defendant is a New York corporation with its principal place of business at 239 Trade Zone Drive, Ronkonkoma, New York 11779 (Compl. at ¶ 9).  Defendant is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5) (Compl. at ¶ 10).

C.    The Arbitration Award

7.    The Union and defendant were parties to the Agreement, which, by its terms, became effective on July 1, 2001 (Plaintiffs' Findings of Fact and Conclusions of Law with Respect to the Inquest on Damages, dated Jan. 11, 2011 ("Pls.' Findings of Fact and Conclusions of Law") (Docket Item 8), ¶ 1; see also Ex. A to Declaration of Andrew Grabois, dated Jan. 11, 2011 ("Grabois Decl.") (Docket Item 9), 1).

8.    Article XIX of the Agreement ("Expiration Clause")

provided that, upon expiration of the Agreement and absent
written notice by either party, the Agreement would automatically
renew for one-year intervals (Pls.' Findings of Fact and Conclu-
sions of Law at ¶ 1; see also Ex. A to Grabois Decl. at 60).

9.    Article XV of the Agreement ("Fringe Benefit
Funds") provided that (1) upon the request of the Trustees of the
Benefit Funds ("Trustees"), defendant would make available all of
its books and records necessary for an audit and (2) any disputes
between the parties would be submitted to final, binding arbitra-
tion (Pls.' Findings of Fact and Conclusions of Law at ¶ 2;
see also Ex. A to Grabois Decl. at 37-38, 44-46).

10.   A dispute arose between the parties during the
pendency of the Agreement when the Trustees requested that
defendant make its books and records available for the purpose of
an audit and defendant failed to comply with this request (Pls.'
Findings of Fact and Conclusions of Law at ¶ 3; see also Ex. A to
Compl. at 5-6).

11.   Pursuant to the Agreement, the dispute concerning
defendant's books and records was submitted to arbitration (Pls.'
Findings of Fact and Conclusions of Law at ¶ 4; see generally Ex.
A to Compl.).

12.   On March 13, 2009, an arbitration hearing was held

7

in the matter.   Because neither defendant's counsel nor defendant appeared at the hearing, it proceeded as a default hearing (Pls.' Findings of Fact and Conclusions of Law at ¶ 5; see also Ex. A to Compl. at 3-5).

13.   After the hearing, the arbitrator rendered a decision dated May 5, 2010 in favor of plaintiffs ("Arbitration Award") (Pls.' Findings of Fact and Conclusions of Law at ¶ 5; see also Ex. A to Compl.).   In rendering this decision, the arbitrator first noted that the Agreement was in effect to date because no evidence had been presented that defendant provided the Union with the written notice necessary to modify or termi-nate the Agreement (Ex. A to Compl. at 2-3).   The arbitrator then (1) determined that defendant failed to comply with the Agreement as it related to fringe benefit monies, (2) directed defendant to make its books and records available to plaintiffs for the period of June 17, 2006 through March 13, 2009 and (3) awarded plain-tiffs attorneys' fees and costs in the amount of $2,350.00 with interest to be paid on that amount at the rate of 5.25% per annum from the date of the award (Pls.' Findings of Fact and Conclu-sions of Law at ¶¶ 6-7; see also Ex. A to Compl. at 6-7).

14.   Defendant failed to comply with the terms of the Arbitration Award (Pls.' Findings of Fact and Conclusions of Law at ¶¶ 8, 11).

D.   Relief Sought
     by Plaintiffs

15.   Plaintiffs commenced an action in this Court on July 7, 2010 to confirm and enforce the Arbitration Award (Pls.' Findings of Fact and Conclusions of Law at ¶¶ 8, 23).  On July 19, 2010, plaintiffs served defendant with the Summons and Complaint by delivering two copies of each document to the New York Secretary of State (Docket Item 3).

E.   Plaintiffs' Attorneys'
     Fees and Costs

16.   In addition to an order confirming the Arbitration Award, plaintiffs seek to recover the attorneys' fees and costs that they have incurred in this action (Pls.' Findings of Fact and Conclusions of Law at ¶¶ 17, 23).

17.   Plaintiffs were represented by the firm of O'Dwyer & Bernstien, LLP until a substitution of counsel was effected on July 19, 2011 (Stipulation and Order of Substitution of Attorney, dated June 16, 2011 ("Substitution of Counsel") (Docket Item 15); see Ex. E to Affidavit of Andrew Grabois in Support of Default Judgment, dated Aug. 25, 2010 ("Grabois Aff."); Ex. A to Pls.' Findings of Fact and Conclusions of Law).  This substitution does

9

not, however, affect the amount that plaintiffs seek for attorneys' fees and costs.

18.   Plaintiffs seek to recover a total of $2,225.00 in attorneys' fees beyond the fees awarded by the arbitrator,[4] as well as $60.00 in costs.  With respect to attorneys' fees, plaintiffs contend:  (1) their attorney spent 2.5 hours working on this matter at an hourly rate of $350.00 and (2) two paralegals spent 9 hours working on this matter, the first of which worked 6 hours at an hourly rate of $125.00 and the second of which worked 3 hours at an hourly rate of $200.00[5] (see Ex. E

---

[4]In paragraph seventeen of "Plaintiffs' Findings of Fact and Conclusions of Law with Respect to the Inquest on Damages," plaintiffs contend that they are entitled to recover $1,825.00 in attorneys' fees.  In paragraph twenty-three, however, plaintiffs contend that they are entitled to recover $2,225.00 in attorneys' fees.  The latter figure is the correct amount as it comports with the fees set forth in plaintiffs' affidavits submitted in support of their application for fees incurred in this action (see Ex. E to Grabois Aff.; Ex. A to Pls.' Findings of Fact and Conclusions of Law).

[5]Paragraph eight of the "Affidavit of Services" attached to plaintiffs' application for default judgment reads:  "On August 24, 2010 and August 25, 2010, Ms. Camner drafted the required default documents, including a proposed default judgment and order and affidavit of services rendered and prepared the document for filing [sic]" (see Ex. E to Grabois Aff. at ¶ 8).  This paragraph is clearly missing some information because it does not include the amount of hours that Camner, a paralegal, spent drafting the default documents nor the hourly rate at which this work was billed.  However, based upon the overall amount that plaintiffs seek for attorneys' fees, it appears that Camner billed 4 hours of work on these dates at an hourly rate of $125.00.

to Grabois Aff.; Ex. A to Pls.' Findings of Fact and Conclusions
of Law).  Plaintiffs have not, however, submitted any contempora-
neous time records in support of their application for attorneys'
fees nor do plaintiffs state that the information set forth in
the supporting affidavits are based on contemporaneous time
records.

19.  Plaintiffs also seek to recover $60.00 in costs
for the service of process (Ex. E to Grabois Aff.; see also Ex. A
to Pls.' Findings of Fact and Conclusions of Law).

III. Conclusions of Law

A.   Jurisdiction and Venue

20.  This action arises under the LMRA and
ERISA, and, as such, this Court has subject matter jurisdiction
pursuant to 29 U.S.C. § 185 and 29 U.S.C. § 1132, respectively.[6]

---

[6]This action also arises under the Federal Arbitration Act
("FAA"), 9 U.S.C. § 9.  However, "[a]lthough [this Act] provides
the substantive law for the confirmation of arbitration awards,
[] '[it] in fact does not independently confer subject matter
jurisdiction on the federal courts.'"  New York City Dist.
Council of Carpenters Pension Fund v. Star Intercom & Constr.,
Inc., 11 Civ. 3015 (RJH), 2011 WL 5103349 at *3 (S.D.N.Y. Oct.
27, 2011) (Holwell, D.J.), quoting Durant, Nichols, Houston,
Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir.
2009); see also Scandinavian Reinsurance Co. Ltd. v. Saint Paul
Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012).

This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

21.   Defendant has made an appearance in this action and has not objected to this Court's jurisdiction on the basis of either lack of personal jurisdiction or improper venue (see Docket Item 13).  Accordingly, objections on either basis have been waived.  Fed.R.Civ.P. 12(h).

B.   The Arbitration Award
     Should be Confirmed

22.   With respect to the confirmation of an arbitration award, the Court of Appeals for the Second Circuit has stated:

> [D]efault judgments in confirmation/vacatur pro-
> ceedings are generally inappropriate.  A motion to
> confirm or vacate an award is generally accompanied by
> a record, such as an agreement to arbitrate and the
> arbitration award decision itself, that may resolve
> many of the merits or at least command judicial defer-
> ence.  When a court has before it such a record, rather
> than only the allegations of one party found in com-
> plaints [sic], the judgment the court enters should be
> based on the record.  It does not follow, of course,
> that the non-movant can simply ignore such a motion.
> If the non-movant does not respond, its failure to
> contest issues not resolved by the record will weigh
> against it.
>
>                 *     *     *
>
> [Thus, a motion to confirm an arbitration award
> should be] treated as akin to a motion for summary
> judgment based on the movant's submissions.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006);

see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114,

135-36 (2d Cir. 2011); see also Trs. of the New York City Dist.

Council of Carpenters Pension Fund v. SDS Labor, Inc., 11 Civ.

6267 (DLC), 2011 WL 6181351 at *2 (S.D.N.Y. Dec. 13, 2011) (Cote,

D.J.); New York City Dist. Council of Carpenters Pension Fund v.

Star Intercom & Constr., Inc., supra, 2011 WL 5103349 at *3;

Mason Tenders Dist. Council of Greater New York & Long Island v.

Circle Interior Demolition, Inc., 07 Civ. 11227 (RMB)(THK), 2009

WL 5061744 at *1, *5 (S.D.N.Y. Dec. 22, 2009) (Berman, D.J.

adopting the Report and Recommendation of Katz, M.J.).  In this

action, plaintiffs' motion to confirm the Arbitration Award is

accompanied by the type of record described by the Second Circuit

in D.H. Blair, i.e., an agreement to arbitrate (here, the Agree-

ment) and an arbitration award decision (here, the Arbitration

Award).  Accordingly, on the basis of the foregoing authorities,

I respectfully recommend that plaintiffs' motion for a default

judgment be treated as one for summary judgment.

     23.  The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

          Summary judgment shall be granted when there is no
     genuine issue of material fact and the moving party is
     entitled to judgment as a matter of law.  Fed.R.Civ.P.
     56(c) . . . . This form of remedy is inappropriate when
     the issue to be resolved is both genuine and related to

a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'"  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).  Additionally:

14

> The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists . . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, "[t]he evidence of the non-movant is to be believed."

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted); see also Jeffreys v. City of New York, supra, 426 F.3d at 553 ("'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'"), quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Finally, even where a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default.  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

24.  "Judicial review of a labor-arbitration decision pursuant to [] an agreement [between an employer and a labor organization] is very limited."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  Further:

> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the

15

decision rests on factual errors or misinterprets the
parties' agreement. <u>Paperworkers v. Misco, Inc.</u>, 484
U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).  We
recently reiterated that if an "'arbitrator is even
arguably construing or applying the contract and acting
within the scope of his authority,' the fact that 'a
court is convinced he committed serious error does not
suffice to overturn his decision.'" <u>Eastern Associated
Coal Corp. v. Mine Workers</u>, 531 U.S. 57, 62, 121 S.Ct.
462, 148 L.Ed.2d 354 (2000) (<u>quoting</u> <u>Misco</u>, <u>supra</u>, at
38, 108 S.Ct. 364).  It is only when the arbitrator
strays from interpretation and application of the
agreement and effectively "dispense[s] his own brand of
industrial justice" that his decision may be unenforce-
able.  <u>Steelworkers v. Enterprise Wheel & Car Corp.</u>,
363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424
(1960).  When an arbitrator resolves disputes regarding
the application of a contract, and no dishonesty is
alleged, the arbitrator's "improvident, even silly,
factfinding" does not provide a basis for a reviewing
court to refuse to enforce the award.  <u>Misco</u>, 484 U.S.,
at 39, 108 S.Ct. 364.

<u>Major League Baseball Players Ass'n v. Garvey</u>, <u>supra</u>, 532 U.S. at

509; <u>see</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, --- U.S.

---, 130 S.Ct. 1758, 1767 (2010).

25.  The Second Circuit has also stated:

Normally, confirmation of an arbitration award is
"a summary proceeding that merely makes what is already
a final arbitration award a judgment of the court,"
<u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d
Cir. 1984), and the court "must grant" the award "un-
less the award is vacated, modified, or corrected." 9
U.S.C. § 9.  The arbitrator's rationale for an award
need not be explained, and the award should be con-
firmed "'if a ground for the arbitrator's decision can
be inferred from the facts of the case,'" <u>Barbier v.
Shearson Lehman Hutton, Inc.</u>, 948 F.2d 117, 121 (2d
Cir. 1991) (<u>quoting</u> <u>Sobel v. Hertz, Warner & Co.</u>, 469
F.2d 1211, 1216 (2d Cir. 1972)).  Only "a barely
colorable justification for the outcome reached" by the

16

> arbitrators is necessary to confirm the award. <u>Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union</u>, 954 F.2d 794, 797 (2d Cir. 1992) . . . .

<u>D.H. Blair & Co. v. Gottdiener</u>, <u>supra</u>, 462 F.3d at 110; <u>see</u> <u>Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.</u>, <u>supra</u>, 668 F.3d at 71-72; <u>Reliastar Life Ins. Co. of New York v. EMC Nat'l Life Co.</u>, 564 F.3d 81, 85-86 (2d Cir. 2009); <u>Rich v. Spartis</u>, 516 F.3d 75, 81 (2d Cir. 2008); <u>Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC</u>, 497 F.3d 133, 138-39 (2d Cir. 2007).[7]

26. Finally, the FAA provides limited circumstances under which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators . . . . ;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[7]<u>See also</u> <u>Trs. of the New York City Dist. Council of Carpenters Pension Fund v. SDS Labor, Inc.</u>, <u>supra</u>, 2011 WL 6181351 at *2-*3; <u>New York City Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc.</u>, <u>supra</u>, 2011 WL 5103349 at *4; <u>Mason Tenders Dist. Council of Greater New York & Long Island v. Circle Interior Demolition, Inc.</u>, <u>supra</u>, 2009 WL 5061744 at *5.

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

27. I note at the outset that plaintiffs' application to confirm the Arbitration Award is unopposed.  Although defendant makes various contentions about the issuance of the award,[8] defendant (1) concedes that because "[m]ore than ninety (90) days have elapsed since the issuance of the [award] . . . there is no basis for vacating [it] . . . . " and (2) generally states that "[a] decision by [d]efendant's counsel not to move to vacate the award of the arbitrator was clearly not made [in] bad faith but [was instead] a financial [decision]" (Defendant's Finding of Fact [sic] and Conclusions of Law with Respect to the Inquest on Damages, dated Mar. 22, 2011 ("Def.'s Findings of Fact and Conclusions of Law") (Docket Item 12), ¶¶ 10, 13).

---

[8]Specifically, defendant contends the following:  (1) it settled a separate, unrelated dispute with plaintiffs "[during] calendar year 2008" at which time defendant "orally advised [p]laintiff's counsel . . . that it was done with the union;" (2) it did not receive notice of the arbitration hearing, and, further, it did not receive a response from the Union concerning its request for the award to be vacated and a new hearing held in the matter and (3) it did not "receive [] a copy of the summons and complaint in this action and [] was not aware of this action until [] receipt of the . . . default judgment and other documents" (Def.'s Findings of Fact and Conclusions of Law at ¶¶ 2-3, 4-8, 9).

28.   Plaintiffs have shown that there is
no genuine issue of material fact which would preclude summary
judgment in this case.  The arbitrator based his decision on the
Agreement as well as plaintiffs' testimony and other evidence
offered at the hearing held on March 13, 2009 (see generally Ex.
A to Compl.).

29.  First, the Agreement expressly provided that all
disputes between the parties would be submitted to arbitration
(Ex. A to Compl. at 3; Ex. A to Grabois Decl. at 33-35).

30.  Second, the Agreement expressly provided that
absent written notice by either party, the Agreement would
automatically renew for one-year intervals (Ex. A to Compl. at 2-
3; Ex. A to Grabois Decl. at 60).  Because plaintiffs testified
at the hearing that no such notice had been given to them and no
evidence was presented to the contrary, the arbitrator properly
determined that the Agreement was in effect as of the hearing
date (Ex. A to Compl. at 2-3, 5).

31.  Third, the Agreement expressly provided that
defendant was required to make certain contributions to the
"Fringe Benefit Trust Funds," and, further, that plaintiffs were
authorized to conduct an audit of defendant's books and records
for the purpose of verifying that these contributions had been

19

properly made (Ex. A to Compl. at 5-6; Ex. A to Grabois Decl. at 36-42).

32.   Thus, on the basis of the foregoing, the arbitrator determined that defendant violated the Agreement when it failed to give plaintiffs' accountant access to its books and records for the purposes of conducting an audit (Ex. A to Compl. at 5-6).   There is nothing from the record in this action, nor from the Arbitration Award itself, that indicates the arbitrator strayed from interpretation and application of the agreement or effectively dispensed his own brand of industrial justice.   See New York City Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc., supra, 2011 WL 5103349 at *4.   There is also no reason to believe that any of the grounds listed in 9 U.S.C. § 10(a) for vacating an arbitration award are applicable here.   See New York City Dist. Council of Carpenters Pension Fund v. Allboro Drywall Sys. Inc., 10 Civ. 805 (LAK)(FM), 2010 WL 3785268 at *2-*3 (S.D.N.Y. Aug. 19, 2010) (Maas, M.J.) (Report and Recommendation).

33.   In addition, the arbitrator noted that defendant was properly served with notice of the March 13, 2009 hearing. The arbitrator further noted that (1) by letter dated September 12, 2008, defendant's counsel filed a Notice of Appearance in the matter and (2) two hearings that had been scheduled after the

Notice of Appearance was filed but prior to the March 13, 2009 hearing were adjourned by request (Ex. A to Compl. at 3-5).

34.  The arbitrator's award of $2,350.00 -- comprised of attorneys' fees in the amount of $1,500.00, the arbitrator's fee in the amount of $500.00 and court costs in the amount of $350.00 (Ex. A to Compl. at 6-7) -- with interest to accrue at 5.25% per annum from the date of the award is also reasonable for the same reasons set forth above.  Although supporting documenta- tion for these fees and costs have not been provided to this Court, nor is the documentation described in the arbitrator's decision, there is nothing to indicate that (1) the arbitrator erred in a manner that would render the award unenforceable or (2) that any of the grounds listed in 9 U.S.C. § 10(a) are applicable here.  Thus, the yearly interest on an award of $2,350.00 at a rate of 5.25% per annum is $123.375 and the daily interest is $0.338.[9]  As 762 days have elapsed since May 5, 2010, plaintiffs are entitled to $257.56 in post-award, pre-judgment interest.

--------

[9]Because plaintiffs do not specify whether they are entitled to simple or compound interest pursuant to the Agreement, I calculate the yearly and daily interest rates using simple interest.  See New York City Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc., supra, 2011 WL 5103349 at *5 & n.3, citing Audiovisual Publishers, Inc. v. Cenco Inc., 185 F.3d 93, 97 (2d Cir. 1999).

35.   On the basis of the foregoing, the Arbitration
Award should be confirmed.   In sum, this will require that
defendants (1) permit plaintiffs to conduct an audit of its books
and records for the period of June 17, 2006 through March 13,
2009 to determine whether it complied with its obligation to make
certain contributions to the Benefit Funds and (2) pay to plain-
tiffs $2,350.00 in attorneys' fees and costs, as well as $257.56
in post-award, pre-judgment interest.   Interest will continue to
accrue on the award of $2,350.00 at the rate of $0.338 per day
until payment is made.

C.   Fees and Costs

36.   Plaintiffs contend that they are entitled to
recover the attorneys' fees and costs that they have incurred in
this action because (1) the Agreement provides for the recovery
of such fees, (2) the Court has the inherent equitable power to
award such fees and (3) ERISA provides for the recovery of such
fees, see, 29 U.S.C. § 1132(g) (Pls.' Findings of Fact and
Conclusions of Law at ¶ 17).   Defendant opposes plaintiffs'
application on the ground that it would be unfair for this Court
to award the requested fees when defendant "had no opportunity to
be heard" (Def.'s Findings of Fact and Conclusions of Law at
¶¶ 12-13).

22

37.   In the Second Circuit, a party seeking to recover attorneys' fees must submit contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). Transcriptions of contemporaneous time records containing the above information have been found to satisfy this requirement. See e.g. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) (Sweet, D.J.) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied."); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.) ("The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court.").  "Attorneys' fees applications that do not contain such supporting data

'should normally be disallowed.'"   Cablevision Sys. New York City
Corp. v. Diaz, 01 Civ. 4340 (GEL)(FM), 2002 WL 31045855 at *5
(July 10, 2002) (Mass, M.J.) (Report and Recommendation), quoting
New York State Ass'n for Retarded Children, Inc. v. Carey, supra,
711 F.2d at 1154 and citing Kingvision Pay-Per-View v. The Body
Shop, 00 Civ. 1089 (LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13,
2002) (Swain, D.J.).

        38.  Here, plaintiffs have submitted two affidavits in
support of their request for attorneys' fees.  These affidavits
list dates, descriptions of work, amounts of times spent on each
task completed and an hourly rate at which these tasks were
billed.  Both affidavits, however, do not state that the summary
of hours expended was based on a compilation of contemporaneous
time records.  Notwithstanding this, plaintiffs are correct that
the Agreement provides for the recovery of "reasonable attorney's
fees and costs" in the event that "formal proceedings are insti-
tuted before a court of competent jurisdiction . . . to collect
delinquent contribution" (Ex. A to Grabois Decl. at 43-44).  In
addition, plaintiffs are correct that ERISA provides that "the
court in its discretion may allow a reasonable attorney's fee and
costs of action to either party."  29 U.S.C. § 1132(g).  Thus,
while I respectfully recommend that plaintiffs' application for
attorneys' fees be denied at this time, I further recommend that

plaintiffs be afforded 30 days to renew their application for attorneys' fees supported by contemporaneous time records.

39.   Plaintiffs are entitled to recover the costs that they incurred to serve defendants in this action, i.e., $60.00 for the process server's fee.

## IV.   Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the Court (1) treat plaintiffs' motion for default judgment as one for summary judgment, (2) confirm the arbitration award, (3) deny plaintiffs' application for attorneys' fees incurred in this action, but allow them 30 days to submit contemporaneous time records supporting their fee application and (4) award plaintiffs $60.00 for costs.

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jesse M. Furman, United States District Judge, 500 Pearl Street,

25

Room 630, and to the Chambers of the undersigned, 500 Pearl

Street, Room 750, New York, New York 10007.   Any requests for an

extension of time for filing objections must be directed to Judge

Furman.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT

IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         June 5, 2012

                                     Respectfully submitted,


                                     HENRY PITMAN
                                     United States Magistrate Judge


Copies transmitted to:

Charles R. Virginia, Esq.
Virginia & Ambinder, LLP
111 Broadway
New York, New York  10006

Bernard A. Nathan, Esq.
P.O. Box 443
West Islip, New York  11795